*The* PRESIDENT &c. *of the* CANAL BANK *vs.* COX & *trustees.*

An insolvent debtor having made an assignment of his effects, in trust for the payment of such of his creditors as should assent to it within a certain reasonable time ; it was *held* to be no good objection to its validity, that it contained, on the list of preferred creditors, one who was only a surety, and who had not yet been damnified, but was named as a creditor to the amount of his liabilities :—

Nor, that it contained an exception from the general conveyance of his property, in these words ;—" saving only his necessary and proper household furniture, family apparel, and means of paying his small debts under fifty dollars, and ordinary family expenses ;" the excepted property being thus left open to attachment, *as it was before ;* it never having passed to the assignees :—

Nor, that it provided for the previous payment of the expenses and commissions of the assignees, before any distribution to creditors :—

Nor, that it contained a provision for the discharge of the debtor's sureties, as well as of the debtor himself.

THE persons summoned as trustees in this case were the assignees of *John Cox,* in a general assignment of his property for the benefit of his creditors ; and the question was upon the validity of the assignment.

The instrument contained a general sale and conveyance of all the property mentioned in certain schedules annexed, which were understood to include all his goods, estate, credits and effects, with an exception in these words—" saving only his necessary and proper household furniture, family apparel, and means of paying his small debts under fifty dollars, and ordinary family expenses."

The conveyance was upon trust for the payment of certain classes of the creditors of *Cox,* mentioned in other schedules annexed ; and among these was the name of *Joseph Harrod,* as a creditor, in the sum of $34,405,90, as being the amount of his liabilities as *Cox's* indorser and surety.

There was also inserted in the indenture a covenant by the creditors for the release of *Cox* as drawer, and *Harrod* as indorser, and all other persons as acceptors of any bills or drafts holden by such creditors, drawn by *Cox* upon the house of *Gurney & Packard,* and by them accepted.

But before any distribution of the effects, the expenses of the assignees in the execution of the trusts were to be deducted from the gross fund. The estimated value of the property assigned was $81,133,84, and of debts due, including liabilities of *Harrod*, was $96,280,99.

The residue of the indenture was in the common form of an assignment of an insolvent debtor's effects, in trust for the payment of his debts; the creditors constituting the third party, and having generally signified their assent by executing the assignment.

The trustees disclosed that all the property assigned to them would not be sufficient to pay the creditors for whose use and benefit it was assigned, and who had become parties to the indenture before they were summoned as trustees.

*Todd* and *Fessenden*, for the plaintiffs, argued that the assignment was fraudulent against creditors, and therefore void. 1st. Because *Harrod* was not a creditor of *Cox* when the assignment was made; but was only a surety, who had not then sustained damage. And such liability formed no legal ground for an absolute assignment, as this is. He may never be compelled to pay the drafts and bills he has indorsed; nor has he stipulated at all events so to do. *Gorham v. Herrick*, 2 *Greenl.* 87.

2. Because of the reservation of the assignor's household furniture, family apparel, means of paying his small debts, and family expenses. The statute of the State having fixed the legal limit to the amount of household furniture which a debtor may retain free from attachment, every reservation beyond that, is a fraud upon the law. The other reservations in the indenture are dependent, in their amount, upon the will and pleasure of the assignor; he being under no covenant to disclose the number of his small debts, and no limit being fixed to the amount of his family expenses; nor any designation of the fund out of which they were to be paid. Such provision for the debtor vitiates the whole transaction. *Harris v. Sumner*, 2 *Pick.* 129; *Riggs v. Murray*, 2 *Johns. Ch.* 577, 580; *Widgery v. Haskell*, 5 *Mass.* 151; *Marston v. Coburn*, 17 *Mass.* 454; *Drinkwater v. Drinkwater*, 4 *Mass.* 357.

3. The provision for payment of all the costs and expenses of the assignees, and a reasonable compensation for their services, is also

illegal, and goes to the foundation of the assignment. By the operation of this clause the creditors are made chargeable with salaries to the extent of the debtor's discretion; and even with the costs of an unsuccessful resistance at law against the payment of their own debts.

4. The provision for the discharge not only of *Cox*, but also of *Harrod* and *Gurney & Packard*, his indorsers, who have brought nothing into the common fund, is an unreasonable condition, to which no creditor ought to be compelled to assent, as the condition of any participation in the benefits of the assignment.

5. On general principles, it is void, as a fraud upon the common law, and the statutes of *Elizabeth* against fraud; and upon our law of attachment. *Devon v. Watts, Doug.* 91; *Worseley v. Dematos,* 1 *Burr.* 474; *Cadogan v. Kennett, Cowp.* 433; *Rust v. Cooper, Doug.* 629; *Harmon v. Fisher, Cowp.* 117; *Truman v. Fentor, ib.* 548; *Martin v. Pewtress,* 4 *Burr.* 2477; *Hatch v. Smith,* 5 *Mass.* 52; *Stevens v. Bell,* 6 *Mass.* 342; *Burlingame v. Bell,* 16 *Mass.* 324; *Alderson v. Temple,* 4 *Burr.* 2238; *Mackie v. Cairns,* 5 *Cower,* 547; *How v. Ward,* 4 *Greenl.* 195; 1 *Pick.* 358; 1 *Bl. Com.* 141, 142; 2 *Bl. Com.* 471; *Linton v. Bartlett,* 3 *Wils.* 47.

*Longfellow* and *Greenleaf,* on the other side, cited *Stevens v. Bell,* 6 *Mass.* 342; *Maine F. & M. Ins. Co. v. Weeks,* 7 *Mass.* 438; *Halsey v. Whitney,* 4 *Mason,* 206; *Marbury v. Brooks,* 7 *Wheat.* 556; *Brooks v. Marbury,* 11 *Wheat.* 78; *Murray v. Riggs,* 15 *Johns.* 571, overruling the same case in 2 *Johns. Ch.* 577; *Mackie v. Cairns,* 5 *Cower,* 547; *Fox v. Adams & tr.* 5 *Greenl.* 245.

The opinion of the Court was read at the following *November* term, as drawn up by

MELLEN C. J. The counsel for the plaintiff contends that upon the disclosure of the trustees, they ought to be charged, on the ground that the assignment by *Cox* to them, which forms a part of the disclosure, is fraudulent and void, for reasons appearing on the face of it. No actual fraud is imputed to any of the parties; so that the question for our decision is whether it is to be adjudged fraudulent and inoperative, as against the plaintiffs and the other credi-

tors, who have not assented to it. If it is, the trustees must be charged; if not, they must be discharged; because it appears on their disclosure " that all the property assigned, will not be sufficient to pay the creditors for whose use and benefit it was assigned, and who had become parties to said assignment before the writ was served" upon them in this action.

Several objections have been urged by the counsel for the plaintiffs against the validity of the assignment; in the examination of which, the principles of law deemed applicable to them, will be considered and applied. Before entering into particulars, it may be useful to bestow a few observations, of a general character, upon the nature of an assignment made by an insolvent debtor in trust, for the payment of his debts. Such an assignment, when completed, is made by a deed, whereby the debtor transfers his property to some assigneee or assignees in trust, for the payment of his debts, in such order as may be agreed upon, and to such creditors as shall, within a limited time, assent to the terms of the assignment. Such deed of assignment contains also the assent of the assignees, to perform the duties of their appointment and their covenants to perform them with care and fidelity, according to the conditions therein expressed; and also the agreement of a portion of the creditors to accept of the terms of the assignment, and a release to the debtor of their several demands. When signed and fully executed by such debtor, assignee or assignees, and such creditors, without any fraud on the part of the debtor, it becomes a binding contract on all who have thus executed it; and other creditors may, if they see cause, also assent to the same within the time limited for the purpose; which must be a reasonable time, according to the circumstances of every case. Such an arrangement is a compromise among those interested; and being made with pure motives, must be honestly observed and executed. A debtor may offer to assign every particle of his property for the purpose above mentioned; or he may offer to assign all, excepting certain portions for his own immediate use and comfort; the creditors may reject or accept such an offer at their pleasure; and they will of course, before deciding, inquire and ascertain whether the offer is a reasonable one; and whether the excepted portions are more than may be fair-

ly retained, to relieve or prevent the wants or sufferings of a destitute person or family. In forming their conclusion, they will be governed also in some measure by their knowledge of the integrity and fairness which have marked the debtor's character and conduct. Those creditors who do not incline to assent to such an assignment, having had a reasonable time for so doing, have no reason to complain; for as to them, the excepted property remains liable to attachment by them, in the same manner as though no assignment had been made. And if the property assigned is not more than sufficient to pay and satisfy the demands of the assenting creditors, there can be no more ground of complaint on the part of others, than if, instead of one assignment, in trust for the assenting creditors, the debtor had made several assignments, one to each creditor, of property sufficient to satisfy his particular demand, in whole or in part. Such a proceeding could never be pronounced fraudulent and illegal.

The first objection to the assignment is that *Harrod* was not a creditor at the time, but only a surety or indorser for *Cox*, and had never paid the debts, or relieved *Cox* from his liabilities. This is true ; but the obvious answer is that the assignment was in trust to secure him as far as practicable from eventual loss by reason of his suretyship. He was then to all equitable purposes, a creditor, fairly entitled to protection and indemnity ; and as such, the provision was made for him. The cases of *Stevens v. Bell* and *Halsey & al. v. Whitney & al.* cited by the defendant's counsel, are direct and decisive authorities against the objection.

Several objections which have been urged, are founded on the clause in the assignment, by which *Cox* saves and excepts " his necessary and proper household furniture, family apparel, and means of paying his small debts under fifty dollars, and ordinary family expenses." To this clause the observations we have already made upon the nature of assignments in trust, have a general application. The excepted furniture, so far as by law attachable, must be considered as within the reach of such creditors as might incline to attach and remove it. The exception, therefore, in respect to the furniture, has not impaired the rights of any one. The reservation of the means of paying small debts is made for a commendable not a fraudulent pur-

pose. The assenting creditors must have reposed confidence in the integrity of *Cox* and in his professed intention to appropriate the means to the payment of those small debts. It is contended, however, that those small creditors have no power to compel *Cox* to pay those debts by the means excepted for the purpose. The answer is, they have the same power over those means which they possessed before the assignment was made. If those means were then of a visible and tangible nature, they might at once have been attached. If they were not, the exception of them left them as much within the reach of a trustee process as they ever were. The exception or saving of means of paying ordinary family expenses, has been urged as constituting a fatal objection to the validity of the assignment. No definite amount is mentioned ; nor limit as to time. We do not mean to say that an assignment may not be pronounced fraudulent and void, where the exception is of such a character or amount as at once to appear extravagant, and the dictate of an unprincipled disregard of the claims of creditors ; for though assented to by the creditors, who became parties to it at the time of its execution, it might furnish evidence of collusion between such creditors and the insolvent, and bring it within the principle of the decision of *Harris v. Sumner*, though the provisions of the assignment might essentially vary from the one in that case. But, be that as it may, the circumstances under which the assignment in the case before us appears, do not authorize such a conclusion ; especially when we consider the amount of property assigned, and the known residence in *Portland* of most of the preferred creditors, who must have been acquainted with the character of *Cox*, the probable amount of his ordinary family expenses, and the time in which his assistance might be necessary in the adjustment of the concern. A limited allowance, both as to time and amount, must have been in the contemplation of the parties to the assignment ; in addition to all which we may subjoin the remark which we have already made, as to the exception of the furniture, apparel and means of paying small debts, viz. that as to such excepted means, and the mode of approaching them by some legal process, the rights of non-assenting creditors have not been in any manner changed or impaired.

The objection to the above mentioned exception is not to be considered in the same light as that which was successfully made to the assignment in the case of *Harris v. Sumner*. In that case all the debtor's property was conveyed to the assignees ; but they covenanted to sell and dispose of it, and, after paying certain creditors, to pay to the assignor $1000. So also in the case of *Mackie v. Cairns*, 5 *Cowen*, 547, *Cairns* assigned all his property to *Sedgwick* and *Lord* " in trust that the said *Sedgwick* and *Lord* shall first pay to the said *William Cairns* out of the proceeds of the assigned premises, from time to time, for the support of the said *William Cairns* and his family, at the rate of $2000 per annum—not exceeding the period of four years" from the date of the assignment. In both these cases the assignments were adjudged void, on account of the abovementioned provisions for securing the stipulated payments. All the property was placed under the control of the assignees ; and by their covenants, they were aiding in, as well as assenting to a fraudulent arrangement for the debtor's benefit. All this appeared on the face of the assignments. But in the case at bar, nothing was conveyed to or was placed under the control of the assignees, but the property described in the schedules annexed to the assignment ; and no part of the furniture, apparel, or means of paying his small debts, and ordinary family expenses, are mentioned in any schedule. These means, whatever they were, *Cox* retained in his own power and possession, and the assignees never had or can have any thing to do with them. This distinction is not to be forgotten or overlooked ; it is important in principle and in its consequences. It is one by which the assignees in the present case must be governed ; for should they appropriate any portion of the funds, received by them from the property assigned, to and for the use of *Cox* for the payment of his small debts or ordinary family expenses, it would be a violation of their covenants, and a fraud upon *Cox's* creditors. We use this cautionary language here, on account of the generality of the term " means" made use of in the assignment, which, however, we have considered as a portion of his unassigned property.

The objection to that part of the assignment, which provides for the allowance of the expenses and commissions of the assignees out of the

property assigned, cannot be sustained. It is usual to allow them ; and without such allowance no assignees will ever accept such an appointment. *Andrews v. Ludlow & tr.* 5 *Pick.* 28. Another objection made to the assignment is, that it provides for the discharge and release of the sureties and indorsers of *Cox,* as well as of *Cox* himself, from all liabilities. The very object of the assignment was to procure a release from his creditors, on giving up his property for their use. No objection has been made to the assignment on account of this condition ; and in order to complete the discharge of *Cox,* it was necessary that a release should be given to the indorsers ; otherwise, on payment of the debts by them, they would have a right of action against *Cox,* to compel a reimbursement ; so that instead of being completely discharged, he would only be relieved from his liability as principal, to the original creditor, and become immediately liable for the same amount to his indorsers. Besides, we do not perceive what interest the plaintiffs have in the release which the assenting creditors have given to *Cox* and his sureties ; or why the extensiveness of such release should be considered as having any operation upon their rights. It is a subject with which they have no concern whatever.

Again it is said that the assignment is a fraud on the law of attachment. This same objection was made in the case of *Halsey & al. v. Whitney & al.* Mr. Justice *Story* observed that he had never been able to understand precisely what was intended by this language ; and after commenting upon it, he overruled the objection. An attachment of property is the commencement of a title to the property attached ; and it may be perfected by a seasonable levy or sale, according to the character of the property ; or a title may originate by the levy or sale, without a previous attachment. This is one mode of acquiring a title. A deed made by a debtor to his creditor is another mode. In this view of the subject, the law of attachment may as well be considered a fraud on an assignment, as an assignment can be considered a fraud upon the law of attachment. The truth is, in the cases supposed, there is no fraud on either side. Priority in the procurement of the title, where no improper or dishonest means are used, settles the question of right. Mr. Justice

*Story* in the above case observes, " Every conveyance by which an insolvent debtor conveys his whole property to a few preferred creditors, not being more than sufficient to pay their debts, and they being parties to the deed, necessarily tends to delay and defeat all other creditors ; but however strong the intention is, thereby to defeat or delay the latter, still it has never been supposed that the conveyance was void on that account. The law allows such preference to any one creditor ; and I am unable to perceive why it does not equally allow a like preference of the whole creditors to one. It is assuming the whole question in controversy, to say that a general assignment is a fraud upon the attachment law, and therefore void. If a fraud, it is doubtless void ; but whether a fraud or not, is a point to be proved."

The last objection urged is, that the assignment is void by the statutes of *Elizabeth,* against fraud. We see no fact or principle, in this case, which can sustain this objection. There is no pretence that there was any actual fraud in the case. All parties appear to have acted openly and in good faith. In the absence of proof to the contrary, we cannot presume that they acted otherwise ; neither is there any question as to the consideration on which the assignment was made ; for it is stated explicitly in the disclosure, that the property and effects assigned are not sufficient to satisfy the debts of those creditors who had become parties to the conveyance before the service of the present trustee process. We are all of opinion that the trustees are entitled to their discharge.